IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| NARGES YOUSSEFI, *et al.* | \* |
| Plaintiffs, | \* |
| v. | Civil Action No. 10-cv-00428-AW |
| DANIEL M. RENAUD, *et al.* | \* |
| Defendants. | \* |

**Memorandum Opinion**

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim, or, in the alternative, for summary judgment. *See* Doc. No. 6. For the reasons stated below, the Court holds that its jurisdiction is limited to deciding whether the United States Citizenship and Immigration Services ("USCIS") erred in deeming the Plaintiff ineligible for a change in nonimmigrant status. The Court cannot issue mandamus forcing the USCIS to exercise its discretion to grant her a change in nonimmigrant status. However, the Court does find that the agency wrongly concluded that the applicable statutory and regulatory framework made her ineligible to be considered for a change in status. Accordingly, the Court will remand the case to USCIS to exercise its discretion in deciding whether to grant Ms. Youssefi's application for a change in status. Thus, Defendants' Motion to Dismiss will be GRANTED in part and DENIED in part.

1

## I. FACTS AND PROCEDURAL BACKGROUND

The Plaintiff, Narges Youssefi, is a native and citizen of Iran who entered the United States on June 28, 2007, with her husband Mahdi Ataee-Ghomi, and son, Pouria Ataee-Ghomi Mahdi, as B-2 nonimmigrant visitors with permission to remain until December 27, 2007. They were granted an extension to remain in the United States as B-2 nonimmigrant visitors until June 27, 2008. Subsequently, Ms. Youssefi was contacted by her employer in Iran, who requested that she remain in the United States and enroll in school to improve her English-language skills.

Thereafter, Ms. Youssefi applied to Kaplan Test Prep to take English classes. She then acquired a Form I-20, a Student and Exchange Visitor Information System, which is required to obtain student status. With advice from the International Student Advisor at Kaplan, Ms. Youssefi selected a start date of November 3, 2008 for the classes, and entered it on the Form I-20. She then filed a Form I-539 application to change her nonimmigrant status from B-2 visitor to F-1 student on June 25, 2008. Her husband and son applied for F-2 status so they could remain with her, but not attend school, in the United States.

On September 8, 2008, the USCIS denied Ms. Youssefi's Form I-539 application, saying that she was ineligible for a change in nonimmigrant status because "[she had not maintained her] current nonimmigrant status up to thirty days prior to the start of classes in order to change status." Record of Proceedings ("ROP") at 000038. On October 9, 2008, Ms. Youssefi filed a motion to reopen and reconsider the denial of the Form I-539 application. On April 28, 2009, USCIS denied the motion to reopen and reconsider, for the same reasons it set forth in its initial decision. On June 1, 2009, Ms. Youssefi filed a second motion to reopen and reconsider the denial of her application. On August 26, 2009, USCIS denied her second motion for the same reasons as articulated in its prior decisions.

On February 23, 2010, the Plaintiff filed a Complaint in this Court, seeking "declaratory, injunctive, mandamus, and appropriate relief" for USCIS's denial of the Form I-539 application. The Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction, for failure to state a claim, or, in the alternative, for summary judgment.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, meaning that they do not have the authority to issue determinations as to all categories of cases without constitutional or congressional approval. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting that the court has jurisdiction carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Motion to Dismiss for Failure to State a Claim

The purpose of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the simplified pleading standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true." *Albright v. Oliver*, 510 U.S. 266, 268 (1994). The Court must also "construe factual allegations in the light most favorable to the plaintiff." *Harrison v. Westinghouse Savannah*

*River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). However, the Court should not accept "legal conclusion[s] couched as . . . factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### C. Motion for Summary Judgment

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

To defeat a motion for summary judgment, the nonmoving party must present affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### D. Standards Governing Judicial Review of Statutory Interpretation by Agencies

As a general matter, there is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). This presumption is rebutted when a statute specifically precludes judicial review. *See* Administrative Procedure Act, 5 U.S.C. § 701(a).

When a court is tasked with reviewing an agency's construction of the statute which it administers, it must, in appropriate situations, accord deference to the agency's reasonable interpretations. *See Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). However, the applicable level of deference depends upon the procedure utilized by the agency to arrive at its interpretation. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000); *United States v. Mead Corp.*, 533 U.S. 218, 227-30 (2001). *Chevron* deference applies only when an agency's interpretation is the product of a formal agency process, such as notice-and-comment rulemaking. *Mead Corp.*, 533 U.S. at 229. In those instances, Congress has given the agency the authority to "speak with the force of law." *Id.* Agency interpretations that are conducted within less formal contexts are entitled to a lower level of deference under the *Skidmore* decision, "but only to the extent that [they] have the power to persuade." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

In order to determine whether an interpretation arrived at in a less formal manner has the power to persuade, courts look to many factors, including the level of technicality involved, whether the subject matter falls within an area of agency expertise, and whether an agency's decision was well-reasoned. *See, e.g.*, *Aluminum Co. v. Cent. Lincoln Util. Dist.*, 467 U.S. 380, 390 (1984); *Inv. Co. Inst. v. Camp*, 401 U.S. 617, 626-27 (1971).

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

It is well-settled that "the court must first determine the question of jurisdiction before it can consider the merits of a claim." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999). Plaintiff alleges the following bases for subject matter jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331; the Declaratory Judgment Act, 28 U.S.C. § 2201; the

5

Administrative Procedure Act, 5 U.S.C. §§ 553, *et seq.*; and the Mandamus Act, 28 U.S.C. § 1361.

Ordinarily, these statutes would suffice to confer jurisdiction for the Court to review agency determinations. However, the Immigration Nationality Act ("INA") specifically divests courts of the jurisdiction to review the discretionary determinations of the USCIS. Under the INA, the decision whether or not to grant a petition for adjustment of nonimmigrant status is expressly committed to the discretion of the Secretary of Homeland Security, who "may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification," provided that the alien is "lawfully admitted to the United States" and is "continuing to maintain" his or her nonimmigrant status. 8 U.S.C. § 1258(a).

Title 8 U.S.C. § 1252 (a)(2)(B)(ii) bars this court from reviewing the decision of the USCIS to deny Plaintiff's application for a change of nonimmigrant status. Section 1252(a)(2)(B) provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review … (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.

The subchapter referred to is Subchapter II of Chapter 12 of Title 8, which encompasses section 1258(a), the provision mentioned above that grants the Secretary of Homeland Security the discretion to adjudicate a change of nonimmigrant status. Thus, the Court lacks jurisdiction to review all discretionary components of the USCIS's decision to deny Plaintiff's change-of-status application.

However, section 1252(a)(2)(B) does not bar the Court from reviewing any non-discretionary dimensions of the USCIS's determination. The Supreme Court has held that there is a "distinction between eligibility for discretionary relief . . . and the favorable exercise of discretion." *I.N.S. v. St. Cyr*, 533 U.S. 289, 307 (2001). "[P]ure questions of law [that do] not touch upon decisions that are under the discretion" of the Attorney General or Secretary of Homeland Security are left to the courts. *Id.* at 305. The Fourth Circuit has summarized the governing jurisdictional principles in the following way: judicial review is "limited to reviewing whether [the Plaintiff] is legally eligible to *be considered* for discretionary relief, specifically, an adjustment of status. We would not review the Director's exercise of his discretion whether to adjust [Plaintiff's] status." *Igwebuike v. Caterisano*, 230 Fed. Appx. 278, 282-83 (4th Cir. 2007) (emphasis in original).

Consequently, the Court has jurisdiction to review the USCIS's determination that Plaintiff Youssefi is statutorily ineligible to be considered for a change of status. If the Court concludes (as it does) that the agency's decision regarding eligibility is erroneous, the Court possesses jurisdiction to remand the case to USCIS, ordering the agency to re-evaluate Plaintiff's change-of-status application in accordance with the appropriate eligibility principles. However, section 1252(a)(2)(B) does not authorize the Court to dictate how the agency ought to exercise its discretion. Thus, the Court lacks jurisdiction to entertain remedies that would supplant the USCIS's discretion, such as a writ of mandamus ordering the agency to grant a change of status.

### B. Rule 12(b)(6) Motion to Dismiss vs. Summary Judgment

The Defendants request that the Court dismiss the Complaint under Rule 12(b)(6), or in the alternative to grant summary judgment. Although the Parties do not address which

7

procedural device is appropriate for disposing of the case, the Court will do so for the sake of clarity.

In general, when "matters outside the pleadings are presented to and not excluded by the court" in connection with a 12(b) motion, the motion "shall be treated as one for summary judgment." Rule 12(d). An exception is made for documents which are referred to in the complaint and upon which the plaintiff relies in bringing the action. *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991). The Plaintiff's Complaint relies extensively on the administrative record. Thus, the Court may review the administrative record attached to Defendants' motion to dismiss, and the motion need not be treated as one for summary judgment.

### C. Plaintiff's Eligibility for Change of Status

In light of the Court's limited jurisdiction in this matter, the only issue for the Court to resolve on the merits is whether the USCIS erred in determining that the Plaintiff is statutorily ineligible for a change in nonimmigrant status. Federal immigration law provides that the Secretary of Homeland Security may authorize a change from one nonimmigrant classification to another for "any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status." 8 U.S.C. § 1258(a). The corresponding federal regulation provides that a nonimmigrant alien "who is continuing to maintain his or her nonimmigrant status, may apply to have his or her nonimmigrant classification changed to any nonimmigrant classification." 8 C.F.R. § 248.1(a). The regulation also states that "a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed, except that failure to file before the period of

procedural device is appropriate for disposing of the case, the Court will do so for the sake of clarity.

In general, when "matters outside the pleadings are presented to and not excluded by the court" in connection with a 12(b) motion, the motion "shall be treated as one for summary judgment." Rule 12(d). An exception is made for documents which are referred to in the complaint and upon which the plaintiff relies in bringing the action. *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991). The Plaintiff's Complaint relies extensively on the administrative record. Thus, the Court may review the administrative record attached to Defendants' motion to dismiss, and the motion need not be treated as one for summary judgment.

### C. Plaintiff's Eligibility for Change of Status

In light of the Court's limited jurisdiction in this matter, the only issue for the Court to resolve on the merits is whether the USCIS erred in determining that the Plaintiff is statutorily ineligible for a change in nonimmigrant status. Federal immigration law provides that the Secretary of Homeland Security may authorize a change from one nonimmigrant classification to another for "any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status." 8 U.S.C. § 1258(a). The corresponding federal regulation provides that a nonimmigrant alien "who is continuing to maintain his or her nonimmigrant status, may apply to have his or her nonimmigrant classification changed to any nonimmigrant classification." 8 C.F.R. § 248.1(a). The regulation also states that "a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed, except that failure to file before the period of

previously authorized status expired may be excused in the discretion of the Service . . . ." 8 C.F.R. § 248.1(b).

The USCIS denied Plaintiff's application for an adjustment of status because it concluded that she did not "maintain" her previously authorized B-2 status until the new status, F-1, was set to begin. Although the Plaintiff filed an application for F-1 status before her prior status expired, her application for a change of status was denied because the date she selected to start school, November 3, 2008, was more than thirty days from the end of her prior status, July 27, 2008. *See* 8 C.F.R. § 214.2(f)(5)(i) ("An F-1 student may be admitted for a period up to thirty days before the indicated report date or program start date."). The USCIS interprets 8 U.S.C. § 1258, 8 C.F.R. § 248.1(b), and 8 C.F.R. § 214.2(f)(5)(i) as meaning that applicants seeking an adjustment of nonimmigrant status from B-2 to F-1 must maintain active B-2 status up to thirty days before their school program start date, and not just until their change-of-status applications are filed with the agency.

The Plaintiff challenges this interpretation, stating that the denial was inappropriate because USCIS's interpretation of the governing regulation is unreasonable. Accordingly, the Plaintiff argues that section 1258 of the United States Code and section 248.1 of the Code of Federal Regulations merely require that an applicant file the change of status application while still in the previously accorded status and do not require the applicant to maintain that status up to thirty days prior to the program start date.

The Parties have not provided the Court with guidance regarding the degree of deference that applies to the USCIS's interpretation of the regulation at issue. Neither Plaintiffs nor Defendants have referred the Court to any interpretive rules or other generally applicable agency documents that support their respective constructions of 8 C.F.R. § 248.1. It would be unfair to

both Parties for this Court to undertake its own search for interpretive rules that arguably cover the legal issue involved in this case.

In this case, the USCIS expressed its interpretation of Section 248.1 through a written denial of Plaintiff Youssefi's application for a change in nonimmigrant status. The agency's review of Plaintiff's change-of-status application did not involve notice-and-comment procedures or the trial-type procedures that are characteristic of formal agency adjudication. Thus, the Court will only accord the agency's interpretation the low level of deference that is given to the informal interpretive decisions of low-level agency officials.[1] *See Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 138 (2d. Cir. 2002) ("[E]ven relatively informal [agency] interpretations, such as letters from regional administrators, warrant respectful consideration."). Under this standard, the Court will defer to the agency's interpretation, "but only to the extent that [it has] the power to persuade." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Defendants have cited a Ninth Circuit case, *Tomeh v. U.S. Dep't. of Homeland Sec.*, 321 Fed. Appx. 620 (9th Cir. 2009), which upheld USCIS's interpretation of 8 U.S.C. § 1258 and 8 C.F.R. § 248.1 as requiring that Tomeh maintain her B-2 status until she was eligible to obtain the F-1 visa. The holding in *Tomeh* was based on the Ninth Circuit's decision in *L.A. Closeout, Inc. v. Dep't of Homeland Sec.*, 513 F.3d 940 (9th Cir. 2008). In *L.A. Closeout*, the court deferred to the USCIS construction of the regulation based on the agency's internal memorandum, the "Pearson Memorandum," which the court held to be an interpretative rule. Interpretative rules are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 88

---

[1] Needless to say, the agency's construction of the underlying statute—8 U.S.C. § 1258—contained in 8 C.F.R. § 248.1 is entitled to *Chevron* deference. However, the validity of 8 C.F.R. § 248.1 is not currently before this Court; rather, the Court is evaluating the validity of the agency's interpretation of its own regulation. The agency has supplied no basis for the Court to defer to the agency's interpretation of section 248.1.

(1995). An agency's interpretative rule is afforded significant deference by the Court. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of its own regulation is "controlling" if it is not "plainly erroneous or inconsistent" with the regulation.).

The facts in *Tomeh* mirror the facts in the case at bar. However, as stated above, Defendants have not directed the Court to an interpretative rule, like the Pearson Memorandum, that would entitle their decision to significant deference. Consequently, this case can be distinguished from *L.A. Closeout* and *Tomeh*. Even though those decisions addressed the USCIS's interpretation of the same set of regulations involved in this case, a different and much higher level of deference applied. Those courts were not asking whether the agency's decision is the *most accurate* or *most persuasive* interpretation of the regulation, but, instead, whether it is a *reasonable* interpretation that is not "plainly erroneous." *L.A. Closeout*, 513 F.3d at 942 (quoting *Auer*, 519 U.S. at 461)). This Court is addressing a fundamentally different question and finds (for the reasons stated below) that, without the benefit of heightened deference, the agency's interpretation of section 248.1 is simply not convincing.[2]

As a preliminary matter, the underlying statute, 8 U.S.C. § 1258, is genuinely ambiguous. It implies that the USCIS may not grant a change of status to someone who has failed to "maintain" his or her nonimmigrant status, but it does not define what it means to "maintain" status. It is unclear from the statute whether a nonimmigrant must continue to maintain her status only until she petitions for a change in classification, or whether she must continue to maintain it until USCIS grants her new nonimmigrant status.

---

[2] However, for the reasons discussed below, the Court not only disagrees with the USCIS's interpretation, but it considers the USCIS's interpretation to be an unreasonable construction of section 248.1. Thus, even if Defendants could identify an interpretive rule substantiating their interpretation of section 248.1, the Court would nonetheless reject that construction.

The implementing regulation, section 248.1, adopts this ambiguous language, yet it also includes other language that clarifies the ambiguity in a way that favors Plaintiff's position. Section 248.1(b) states that "a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed, except that failure to file before the period of previously authorized status expired may be excused in the discretion of the Service . . . ." 8 C.F.R. § 248.1(b). Under the plain language of the regulation, an applicant may be eligible for a change of status even if she failed to file before her previously authorized status expired. The ultimate decision of whether to excuse the applicant's lapse lies within "the discretion" of the USCIS. *Id.*

Plaintiff's situation—filing her application while her B-2 status was still valid, yet subsequently allowing it to expire while her application was being considered by the agency—is not specifically addressed by the language of the regulation. However, her lapse is necessarily less serious and more excusable than the lapse that the regulation expressly excuses. If the failure to file before expiration of status can be excused within the discretion of the service, then, *a fortiori*, it is only logical that filing within status (and later falling out of status) must be excusable. The Court cannot conceive how any reasonable regulator would intend to provide a mechanism for excusing the former, yet not the latter. The USCIS's interpretation would therefore result in an absurd and inexplicable inconsistency within the statute, and such interpretations are disfavored. *See, e.g.*, *United States v. Granderson*, 511 U.S. 39, 56 (1994).

Therefore the Court concludes that section 248.1 gives the USCIS discretion to excuse change-of-status applicants who share Plaintiff's situation: applicants whose prior status remained valid at the time of filing, but later expired. *See Unification Church v. Attorney Gen. for the U.S.*, 581 F.2d 870, 877 (D.C. Cir. 1978) (stating, in dicta, that it "appears to be the

position taken" in 8 C.F.R. § 248.1 that "an applicant nonimmigrant must continue to maintain his 'status' only until he petitions for a change in classification," not "until his petition is granted"); *see also Salehpour v. I.N.S.*, 761 F.2d 1442, 1447 (9th Cir. 1985) ("The plain regulatory language [of section 248.1] allows an applicant to file for change of classification up to the last day of his prior authorized stay.").

Defendants based their decision on the interaction of 8 C.F.R. § 248.1 and 8 C.F.R. 214.2(f)(5)(i), and both Parties have focused much of their analysis on section 214.2(f)(5)(i). That section states that "[a]n F-1 student may be admitted for a period up to thirty days before the indicated report date or program start date." However, the Parties have not clearly indicated how section 214.2(f)(5)(i) applies to the interpretation of 8 C.F.R. § 248.1. Section 214.2(f)(5)(i) clarifies that the agency may only permit an applicant's F-1 status to become effective as early as 30 days prior to her program start date, and no earlier. Nowhere does it state or imply that the agency may not consider change-of-status applicants whose prior status expires more than 30 days prior to their program start date. The regulation simply does not address the dispositive issue, which instead turns on the proper interpretation of section 248.1: whether the agency has discretion to consider applicants who file on time, but subsequently lose their prior status.

In sum, it is apparent from the language and structure of section 248.1(b) that the Secretary of Homeland Security has discretion, in appropriate cases, to excuse change-of-status applicants who file while their prior status is valid, but subsequently fall out of status. Because this Court only has the authority to address the agency's regulatory interpretations relating to eligibility, the case will be remanded to the USCIS for further proceedings consistent with the eligibility principles articulated in this opinion. The Court cannot and will not dictate how the USCIS ought to exercise its discretion on remand, as the INA strips the federal judiciary of

jurisdiction to review the discretionary components of the USCIS's change-of-status decisions. *See supra*.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part, and DENIED in part. This case is remanded to the USCIS for proceedings consistent with this opinion. A separate order will follow.

| | |
|---|---|
| March 11, 2011 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |